<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

THOMAZ GRUBER,

    Plaintiff,

  v.

SABERT CORP.,

    Defendant.

Civil Action No. 21-13312 (MAS) (TJB)

**MEMORANDUM OPINION**

<u>**SHIPP, District Judge**</u>

  This matter comes before the Court on Defendant Sabert Corp.'s ("Sabert") Motion to Dismiss Plaintiff Thomaz Gruber's ("Gruber") Complaint. (ECF No. 4.) Gruber opposed (ECF No. 7), and Sabert replied (ECF No. 8). The Court has carefully considered the parties' submissions and decides the motion without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants in-part and denies in-part Sabert's Motion.

**I.  BACKGROUND**

  This case concerns a dispute over a former executive's bonus and severance. In 2017, Sabert hired Gruber as a Senior Vice President in the Operations and Supply Chain department. (Compl. ¶ 8, ECF No. 1.) Three years later, Sabert introduced a new bonus program to certain executives, including Gruber. (*Id.* ¶¶ 13, 16.) Gruber ultimately signed the resulting Transaction Bonus Agreement (the "Bonus Agreement") (*id.* ¶ 17), which contained the following relevant terms:

> *Exit Event Clause*: An employee would be eligible for a bonus if an "exit event" (defined as a change in control or an initial public offering) occurred before 2030. (*Id.* ¶ 18.)
>
> *Early Cashout Clause*: An employee may elect to terminate the Bonus Agreement by September 1, 2025, in exchange for a calculated cash payment. An employee may only do so, however, if an exit event has not occurred by July 1, 2025. (*Id.* ¶ 25.)
>
> *Forfeiture Clause*: Sabert voids the Bonus Agreement if the employee is fired for cause, if the employee quits, or if the employee violates certain non-compete or non-solicitation covenants. (*Id.* ¶ 26.)

Putting all the provisions together, when Gruber signed the Bonus Agreement, he could expect to receive a bonus if an Exit Event occurred before 2030 or if he elected to take an Early Cashout in 2025. Neither option was available to Gruber if he was fired for cause, quit, or violated other post-employment restrictions.

Naturally, not all went according to the Bonus Agreement's plan. At the height of the pandemic in May 2021, Sabert fired Gruber without cause. (*Id.* ¶¶ 31-32, 37-38.) Sabert then direct deposited into Gruber's bank account his final wages as well as a lump sum payment to buy out Gruber's future interest arising from the Bonus Agreement. (*Id.* ¶¶ 39-43.) Gruber resisted the buyout and refused to touch the money deposited in his account. (*Id.* ¶ 44.)[1] The attempted buyout gave rise to the first of several contractual ambiguities at issue in this litigation: whether the Bonus Agreement allows Sabert to unilaterally buy out Gruber's bonus interests?

Separately, another dispute arose. Shortly after informing Gruber that it was firing him, Sabert offered Gruber a severance package. (*Id.* ¶ 45.) The resulting Separation Agreement contained a General Release Clause, which released Sabert of "any and all claims, causes of action,

---

[1] After filing the Complaint, Gruber returned the funds to Sabert. (Pl.'s Opp'n Br. 4-5 & n.2, ECF No. 7.)

2

damages, demands and recoveries of any kind, whether known or unknown, which [Gruber] has, ever has had, or ever in the future may have and which are based on acts or omissions occurring up to and including the date of" the Separation Agreement. (*Id.* ¶ 48.) The problem with that clause for Gruber, however, was that he did not want to waive his interests under the Bonus Agreement by signing the Separation Agreement. (*See id.* ¶ 50.) To that end, Gruber attempted to negotiate with Sabert to reserve his rights under the Bonus Agreement. (*Id.* ¶¶ 51-54.) Those negotiations ended unsuccessfully, Gruber did not sign the Separation Agreement, and Sabert ultimately revoked the Separation Agreement. (*See id.* ¶¶ 56-57; *see also* Pl.'s Opp'n Br. 6-7 (noting that Sabert revoked the Separation Agreement before the deadline for Gruber to accept).) The drama with the Separation Agreement gave rise to the next contractual ambiguity: does the Separation Agreement void Gruber's rights under the Bonus Agreement?

Considering these ambiguities, Gruber now sues for clarity. Invoking the Court's authority under the Declaratory Judgment Act, Gruber seeks three separate declarations: (1) a declaration that Sabert cannot unilaterally buy out rights under the Bonus Agreement (the "Bonus Agreement Declaratory Judgment"); (2) a declaration that the General Release Clause will not void any rights in the Bonus Agreement (the "Separation Agreement Declaratory Judgment"); and (3) a declaration that if Gruber deposits the money he received from Sabert with the Court, then Gruber will not have waived any rights in the Bonus Agreement (the "Direct Deposit Declaratory Judgment"). (*See generally* Compl.)

## II.  LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A motion to dismiss for lack of subject

matter jurisdiction may either "attack the complaint on its face . . . [or] attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999) (citation omitted). A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists. *Mortensen*, 549 F.2d at 891; *see also Cardio-Medical Assocs. Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983) (citation omitted).

A factual attack under Rule 12(b)(1) challenges the very power of a district court to hear a case, independent of the pleadings. *Mortensen*, 549 F.2d at 891. When evaluating a factual challenge, a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Unlike a facial analysis, no presumption of truth attaches to a plaintiff's allegations in a factual challenge and "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* Furthermore, in a factual challenge, the plaintiff bears the burden of establishing that jurisdiction exists. *Id.*

### III.   DISCUSSION

The Court considers Gruber's three requested declarations in turn.

####   A.   Count I: Bonus Agreement Declaratory Judgment

The Complaint first requests the following declaratory judgment:

> Declaration that Sabert Cannot Force an Employee Terminated Without Cause to Accept a Cash Buyout of the Employee's Vested Rights Under the Transaction Bonus Agreement at Time of Termination.

4

(Compl. *13.)[2] Sabert characterizes this relief as a "declaration that [Gruber] has some definitive and determinable right to a potential incentive bonus of some kind, sometime in the future." (Sabert's Moving Br. 15, ECF No. 4-1.) Based on that characterization, it contends that the Court lacks jurisdiction over the requested declaration because Gruber's opportunity to obtain a bonus has not yet occurred. (*See id.*)

Sabert's argument focuses on the uneasy intersection of the Declaratory Judgment Act (the "Act") and ripeness. The former provides a means for litigants to sue in federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." *Wyatt, V.I., Inc. v. Gov't of the Virgin Islands*, 385 F.3d 801, 805 (3d Cir. 2003) (quoting 28 U.S.C. § 2201(a)). Although that declaration often involves "early adjudication of disputes before escalation," both the Act and the U.S. Constitution demand that any declaratory action qualify as an actual case or controversy. *XL Specialty Ins. Co. v. Westmoreland Coal Co.*, No. 06-1234, 2006 WL 1783962, at *4 (D.N.J. June 26, 2006) (quoting *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994)). Which is where ripeness comes in. Ripeness evaluates whether a litigant has sued too soon, ensuring that federal courts are not weighing in on abstract matters. *See Artway v. Att'y Gen. of N.J.*, 81 F.3d 1235, 1246-47 (3d Cir. 1996) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). Notably, however, as the Third Circuit has cautioned, declaratory judgments are "in some tension with traditional notions of ripeness" because courts issue those judgments "before 'accomplished' injury can be established." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 646-47 (3d Cir. 1990). Nevertheless, the Act grants the federal courts discretion over which cases to hear, whereby "the normal principle that federal courts should

---

[2] Pin-cites preceded by an asterisk indicate pagination atop the CM/ECF header.

adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

Distilled down, courts must evaluate three factors to determine whether a case is ripe for resolution: "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment." *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 540 (3d Cir. 2017) (quoting *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004)). Before turning to those factors, however, the Court notes that it disagrees with the breadth of Sabert's characterization of the requested declaratory judgment. As drafted, Gruber is not asking the Court for a declaration of all his rights under the Bonus Agreement. Rather, the Complaint asks a narrower question: whether the Bonus Agreement allows Sabert to buy out Gruber's interest in a future bonus. Indeed, occasioning this lawsuit was Sabert's attempt to buy that interest by direct depositing funds in Gruber's bank account. The Court accordingly focuses its three-factor ripeness analysis on this narrow question.

### 1.   **Adversity of Interests**

"Parties' interests are adverse where harm will result if the declaratory judgment is not entered." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995). The analysis centers on whether the alleged harm is contingent and speculative. Critically, however, it does not require the plaintiff suffer an actual harm; "rather, the element of adversity can be demonstrated so long as there is substantial threat of real harm." *Bradfield v. Heartland Payment Sys., LLC*, No. 17-4862, 2018 WL 5784998, at *5 (D.N.J. Nov. 5, 2018) (citing *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992)).

Here, Gruber's Complaint alleges sufficient adversity of interests. It alleges that Sabert caused Gruber to forfeit his interest in a bonus by depositing funds in Gruber's bank account. (*See* Compl. ¶ 80 ("Nothing in the Transaction Bonus Agreement gives Sabert the right to force an

employee who is terminated without cause to accept a cash buyout of the employee's vested rights to an Incentive Bonus in the future.").) So alleged, Gruber suffered a contractual injury—Sabert unilaterally extinguished Gruber's interest in the bonus that was potentially worth millions.[3] Indeed, nothing about this injury is speculative or contingent because Sabert has *already* acted to buy out Gruber's interest. (*See* Compl. ¶ 39 ("[Sabert] informed Mr. Gruber that in addition to direct-deposit of his final wages, Sabert was also going to direct-deposit a lump-sum payment into his account for the buyout of Mr. Gruber's vested rights under the Transaction Bonus Agreement.").)

Sabert's argument to the contrary rests on a faulty confusion of what Gruber seeks. Sabert urges the Court that no substantial threat of injury exists because neither the Early Cashout nor the Exit Event may occur. (*See* Sabert's Moving Br. 15-17.) True, several contingencies exist where Gruber may not receive a bonus. An exit event may never occur. Gruber may never elect to cash out. Gruber may violate a post-employment covenant. All that notwithstanding, Gruber is not seeking an immediate payout of his 2025 or 2029 interests. Rather, the Complaint seeks a declaration as to whether Gruber is entitled to those interests *at all*. (*See* Compl. *16 (seeking as relief a declaration that "under the terms of the Transaction Bonus Agreement, Sabert cannot unilaterally buy out Mr. Gruber's vested rights to receive an Incentive Bonus in the future, upon the occurrence of an Exit Event or, if Mr. Gruber so chooses, an Early Cashout.").) Said another way, Gruber is seeking a declaration to his entitlement to a contingent *interest* and not—as Sabert contends—immediate relief for a contingent *injury*.

---

[3] The Complaint redacts all references to the dollar amounts of the buyout and the purported value of the bonus in 2025 or 2029. It alleges, however, that Sabert "is currently seeking to take advantage of the 'unique' and 'perfect storm' year of 2020, with its reduced sales due to the pandemic, to buy out Mr. Gruber's vested interests," thereby cutting Gruber out of potentially millions. (*See* Compl. ¶ 66.)

### 2. Conclusiveness

"Conclusiveness is a short-hand term for whether a declaratory judgment definitively would decide the parties' rights." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 344 (3d Cir. 2001) (citing *Step-Saver*, 912 F.2d at 648). To that end, the Court assesses whether "further factual development of the case would facilitate [a] decision" and whether the "question presented is predominantly legal." *Id.* (citing *Travelers Ins. Co.*, 72 F.3d at 1155). Here, the Court has little trouble determining that the conclusiveness factor weighs in favor of exercising jurisdiction. As stated above, the facts reveal the parties' positions: Sabert believes the Bonus Agreement countenances a unilateral buyout because it deposited funds in Gruber's account. Gruber believes that the Bonus Agreement does not allow for a unilateral buyout because he attempted to return the funds. Buttressing this factual story is that the Bonus Agreement Declaratory Judgment asks the Court an interpretative—and therefore predominantly legal—contract question of whether the Bonus Agreement allows Sabert to buy out Gruber's interest. "[T]he interpretation of contract language is a question of law." *Colony Ins. Co. v. Aspen Specialty Ins. Co.*, No. 20-9446, 2021 WL 1589355, at *6 (D.N.J. Apr. 23, 2021) (citation omitted); *see also Travelers Indem. Co. v. Dammann & Co.*, No. 04-5699, 2005 WL 3406374, at *3 (D.N.J. Dec. 12, 2005) ("Construction and interpretation of written instruments . . . is the principal function of a declaratory judgment proceeding.").

### 3. Practical Utility

Because the Court concludes that both the adversity and conclusiveness prongs weigh in favor of jurisdiction, it easily determines that the utility prong also favors jurisdiction. The Court notes here that "[t]he idea behind the Act was to clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future." *Step-Saver*, 912 F.2d at 649. That idea animates this declaration. As it stands today, Gruber does not know whether he still

8

owns an interest in a future bonus—meaning he cannot know his legal rights under the Early Cashout or Exit Event Clauses. Compounding that confusion, if an Exit Event were to occur, a future acquirer or future board will not know whether Gruber's interest is properly classified as a liability. The prudent course is resolution of Gruber's declaratory action now to clarify whether Gruber has an interest in his bonus.

### B. Count II: Separation Agreement Declaratory Judgment

Gruber's next request for a declaration concerns the Separation Agreement:

> Declaration that the General Release in the Separation Agreement Presented to Mr. Gruber Will Not Release Vested Contractual Rights that Mr. Gruber May Have Under the Transaction Bonus Agreement, Which Rights Would Be Exercised In the Future.

(Compl. *17.) Sabert asserts that this declaratory action is moot because it revoked the Separation Agreement before Gruber accepted it. (Sabert's Moving Br. 12.) Gruber counters that the Court should adopt principles of equity to, in essence, revoke Sabert's revocation of the Separation Agreement. (*See* Pl.'s Opp'n Br. 17-20.)

The Court agrees with Sabert. "[A] case is moot if 'developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief.'" *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996)). That is precisely what has happened here. Sabert offered Gruber the Separation Agreement and—after unsuccessful negotiations about the scope of the General Release Clause—Sabert revoked it. Rather than resurrect the negotiations, Gruber chose to sue for declaratory relief over his rights in the now-dead Separation Agreement. Gruber's lawsuit, however, cannot change the status of the Separation Agreement: a revoked offer on which no legal rights presently attach to the parties. *See O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in

9

itself show a present case or controversy regarding [equitable] relief . . . if unaccompanied by any continuing, present adverse effects . . . .").[4]

### C. Count III: Deposit Declaratory Judgment

Gruber's final declaration seeks to deposit funds with the Court so that "Gruber will not be deemed to have waived or released any rights he may otherwise have had under the Transaction Bonus Agreement." (Compl. *20.) Gruber concedes that this request is "now moot" and asks the Court to dismiss this declaration without prejudice. (Pl.'s Opp'n Br. 10.) The Court agrees.

## IV. CONCLUSION

The Court winnows Gruber's Complaint to one count of declaratory relief, which will determine whether Sabert can unilaterally buy out Gruber's bonus interest under the Bonus Agreement. The Court dismisses all other requested relief as moot. It will issue an order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[4] That is not to say that Gruber may not have non-declaratory remedies under traditional contract law. The Court addresses mootness in the context of Gruber's declaratory action only.