UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAZ GRUBER,<br><br>    Plaintiff,<br><br>v.<br><br>SABERT CORPORATION,<br><br>    Defendant. | Civil Action No. 21-13312 (MAS) (RLS)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

SINGH, United States Magistrate Judge.

**THIS MATTER** comes before the Court upon the Motion of Defendant Sabert Corporation ("Defendant") for Sanctions for Spoliation of Evidence (the "Motion"). (Doc. Nos. 51-52). Plaintiff Thomaz Gruber ("Plaintiff") opposes the Motion, (Doc. No. 57), to which Defendant replied, (Doc. No. 58). The Court considers the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth herein, and for good cause shown, Defendant's Motion is hereby **GRANTED**.

**I. BACKGROUND**

The parties and the Court are familiar with the background of this matter. Accordingly, the Court discusses herein only those facts and procedural history related to the instant Motion.

Through this action, Plaintiff seeks a determination of, *inter alia*, his rights under a Transaction Bonus Agreement ("TBA") he entered into with his former employer, Defendant. (*See generally* Doc. No. 1). In October 2017, Defendant hired Plaintiff as Senior Vice President of Operations and Supply Chain. (*See* Doc. No. 1 at ¶ 8). Plaintiff initially participated in Defendant's Stock Appreciation Right's Plan ("SAR"), which three years later was replaced by the TBA. (Doc. No. 52-2, Ex. B). According to Plaintiff, under the TBA, Plaintiff could expect certain payments or "cashouts" in 2025 or upon

1

certain events if occurring before 2030, unless Defendant terminated Plaintiff for cause or Plaintiff quit or violated his post-employment restrictions.[1] (*See* Doc. No. 52-1, Ex. A). The TBA defined "Cause" as: "(i) fraud, misappropriation or embezzlement; (ii) breach of the provisions of [the TBA]; (iii) misconduct or neglect of duties; or (iv) willful conduct that is demonstrably and materially injurious to [Defendant], monetarily or otherwise." (Doc. No. 52-1, Ex. A at ¶ 9(a)).

In May 2021, Defendant terminated Plaintiff's employment, effective as of June 4, 2021, based on alleged concerns with his performance and purported misrepresentations regarding the termination of another employee. (*See* Doc. No. 52-7, Ex. G at 43:19-45:16; 48:13-16, 91:13-93:18; Doc. No. 52-9, Ex. J; Doc. No. 52-10, Ex. K). On or about May 25, 2021, Defendant presented to Plaintiff a Separation Agreement,[2] (*see, e.g.*, Doc. No. 52-14 at p. 3), and, the next day, Plaintiff engaged counsel to review the Separation Agreement and TBA. (Doc. No. 57-11 at p. 3). While Defendant alleges in this action that it considered Plaintiff's termination to be for "cause" under the TBA, Defendant nonetheless paid Plaintiff a sum equivalent to certain vested rights under the TBA. (*See* Doc. No. 51).

---

[1] The TBA contains the following relevant terms: "'Exit Event' means the first to occur of a Change in Control or Initial Public Offering, provided such event occurs prior to January 1, 2030;" (*see* Doc. No. 52-1, Ex. A at ¶ 9(g)); "Early Cashout. If the Exit Event has not occurred by September 1, 2025 . . . . you may irrevocably elect to terminate this Agreement effective as of September 1, 2025 in exchange for a cash payment equal to the incentive bonus amount . . . as if the Exit Event had occurred on July 1, 2025. You must make such election by providing written notice to the Senior Vice President, Human Resources or the Chief Executive Officer no later than October 1, 2025. If you make this election, the Company shall pay such amount to you in a lump sum no later than December 31, 2025;" (*see* Doc. No. 52-1, Ex. A at ¶ 3); and "Forfeiture. If (a) your employment with the Company is terminated for Cause at any time, or if you voluntarily terminate employment from the Company prior to the Exit Event; or (b) you violate the provisions of Section 5 ['Non-Compete and Non-Solicit'], then all rights to the incentive bonus are forfeited and this Agreement shall have no effect from and after the date of such termination or violation, as applicable. In addition, up to one-half of your incentive bonus may be forfeited." (*see* Doc. No. 52-1, Ex. A at ¶ 4).

[2] While the parties do not attach the proposed Separation Agreement to the submissions on the instant Motion, Plaintiff has filed the Separation Agreement as an attachment to his Complaint. (*See* Doc. No. 1-2).

On June 1, 2021, Plaintiff's counsel sent Defendant a letter asserting Plaintiff's claim to a future bonus payment under the TBA, (Doc. No. 52-14, Ex. R), followed by another letter on June 13, 2021, which included a draft of the Complaint, (*See* Doc. No. 52-15, Ex. S). On June 28, 2021, counsel for Defendant replied to Plaintiff's counsel, contending, *inter alia*, that Defendant terminated Plaintiff for "cause" under the TBA based on his poor performance. (Doc. No. 57-13, Ex. K). On July 2, 2021, Plaintiff filed the Complaint, seeking the Court to determine Plaintiff's rights under the TBA. (*See* Doc. No. 51 at p. 5).

During discovery, Plaintiff testified that, throughout his employment, he kept spiral bound notebooks with his notes on meetings, tasks, and other work-related information. (*See* Doc. No. 52-2, Ex. B at 42:23-43:1, 72:22-73:7, 203:20-24, 204:2-17). At his deposition, Plaintiff initially testified that he no longer had these notebooks because he had "recycled" them. (*See* Doc. No. 52-2, Ex. B at 42:23-43:4). However, upon further questioning, Plaintiff stated that he burned the notebooks in a firepit at his home within weeks after his termination "right after" leaving Defendant's employment and at a time when he was "pretty confident" that he would bring a lawsuit against Defendant.[3] (*See* Doc. No. 52-2, Ex. B at 43:11-14, 44:14-19).

Notably, during his employment with Defendant, Plaintiff had signed a Non-Solicitation, Confidentiality, and Inventions Agreement ("Confidentiality Agreement"), which purportedly obligated Plaintiff to preserve and deliver relevant work materials to Defendant upon his termination. (*See* Doc. No. 52-3, Ex. C). In addition, the Separation Agreement presented to Plaintiff on May 25, 2021 included a provision that would have required Plaintiff to agree to return, among other things, "all memoranda, data, notes, plans, records, reports, and other items and

---

[3] Plaintiff did not provide a precise date as to when he burned the notebooks, although he testified it was within weeks of his termination and when he contemplated the instant lawsuit. Defendant terminated Plaintiff as of June 4, 2021, and, by June 13, 2021, Plaintiff had prepared a draft complaint through counsel. Plaintiff initiated this action on July 2, 2021.

documents, whether in electronic, written, or other form (and copies thereof), in any storage media . . . relating to the business of the Company which" Plaintiff had in his control or possession and to represent and warrant that "none of such Confidential Information, data, equipment, and/or property has been destroyed, damaged, harmed, deleted or otherwise negatively impacted by" Plaintiff. (Doc. No. 1 at p. 5, ¶ 11(c)).

After learning of the notebooks' destruction, Defendant filed the instant Motion, seeking sanctions against Plaintiff. (*See* Doc. No. 51). Defendant argues that there can be no dispute that Plaintiff spoliated the notebooks, notwithstanding that it was reasonably foreseeable that they would contain information relevant to this dispute. (*See* Doc. No. 51). Based on the spoliation, Defendant asks the Court to dismiss Plaintiff's claims, preclude Plaintiff's testimony at summary judgment or trial, and/or enter an adverse inference against Plaintiff. (*See* Doc. No. 51).

Plaintiff opposes the Motion, contending that the notebooks likely did not contain relevant information to the main issue in dispute here: whether the TBA permitted a buyout in the event of a termination without cause. (*See* Doc. No. 57). Plaintiff further argues that it was not reasonably foreseeable that the notebooks would have been relevant to Defendant's defenses at the time he destroyed them. (*See* Doc. No. 57). Plaintiff also asserts, *inter alia*, that he did not act in bad faith because he believed the Confidentiality Agreement required that he destroy the notebooks to protect the dissemination of any proprietary information that may be contained within them, as was his practice with prior employers. (*See* Doc. No. 57).

In reply, Defendant claims that Plaintiff fails to rebut the evidence establishing each element of spoliation or to credibly answer why he intentionally incinerated relevant evidence when this litigation was imminent. (*See* Doc. No. 58).

## II. LEGAL STANDARD

Spoliation occurs with "the destruction or significant alteration of evidence, or the failure to preserve [or produce] property for another's use as evidence in pending or reasonably foreseeable litigation." *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (internal quotation omitted); *see also Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (recognizing that spoliation can occur when evidence is destroyed, altered, not preserved, or not produced); *Pace v. Wal-Mart Stores East, LP*, 799 F. App'x 127, 130 (3d Cir. 2020).

A party possessing relevant evidence must preserve that evidence if it knows litigation is pending or probable and "can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). As a result, a court may find spoliation where: a party exercised control over the evidence; "the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and[] the duty to preserve the evidence was reasonably foreseeable to the party." *Bull*, 665 F.3d at 73 (citation and footnote omitted). Foreseeability is a fact sensitive inquiry that looks to whether the duty to preserve was "objectively foreseeable." *Bull*, 665 F.3d at 78. The Court exercises discretion to determine foreseeability based on "the myriad factual situations inherent in the spoliation inquiry." *Id.* at 77-78 (internal quotation marks omitted).

Accordingly, the Court must determine if there was an obligation to preserve and, if so, whether there was spoliation; upon finding spoliation, the Court then turns to the appropriate remedy. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *Kounelis*, 529 F. Supp. 2d at 519. Sanctions may include dismissal of a claim or defense, suppression of evidence, an adverse inference, fines, and/or an award of attorneys' fees and costs. *See Kounelis*, 529 F. Supp. 2d at 519 (citing *Mosaid Tech.*, 348 F. Supp. 2d at 335). In fashioning an appropriate sanction, the Court considers the degree of fault on the party who spoliated, "the degree of

prejudice suffered by the opposing party, [and] whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994). A court will dismiss a claim or defense as a sanction only if another party's case "is severely impaired" based on the spoliation of the evidence. *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (quoting *Bull*, 665 F.3d at 83). Ultimately, the District Court maintains discretion to determine the appropriate sanction. *See, e.g., Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1326 (Fed. Cir. 2011); *Kounelis*, 529 F. Supp. 2d at 520-21.

## III. DISCUSSION

On the instant Motion, the Court first considers whether Defendant has established spoliations and then, if so, what is the appropriate remedy.

### A. SPOLIATION

Here, spoliation would occur if Plaintiff exercised control over the notebooks, which contained information relevant to claims or defenses asserted in this action, and destroyed those notebooks while under a reasonably foreseeable obligation to preserve any relevant evidence. *Bull*, 665 F.3d at 73. Here, the parties do not dispute that Plaintiff exercised control over the notebooks and that he destroyed them. *See Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3d Cir. 1988) (noting that the definition of control includes possession). As a result, the Court focuses the inquiry on whether the notebooks contained information relevant to this dispute and whether it was reasonably foreseeable that Plaintiff was under an obligation to preserve such information.

Whether the notebooks contained relevant information turns on whether the information contained therein would bear on "any fact that is of consequence to the determination of [this]

action." *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 232 (3d Cir. 2004). Defendant argues that the notebooks contained information relevant to whether it terminated Plaintiff for "cause" as defined in the TBA because the notebooks documented Plaintiff's notes of meetings with his supervisor, who Defendant contends repeatedly informed Plaintiff of his poor performance. (*See* Doc. No. 51-1 at pp. 13-17). Defendant further contends that the notebooks also likely contained information as to whether Plaintiff understood the TBA to provide for an immediate payout of vested rights upon a termination without cause. (*See* Doc. No. 51-1 at p. 17). Defendant relies on Plaintiff's deposition testimony that, while he "doubted" taking any notes during the meeting involving the presentation of the TBA, he regularly took notes on important meetings and the TBA "was an important decision." (*See* Doc. No. 51-1 at p. 20; Doc. No. 52-2, Ex. B at 143:23-144:3, 203:5-204:3, 204:13-17, 205:11-13).

In opposing the Motion, Plaintiff argues that Defendant misconstrues his testimony and, rather, he does not believe he took notes during the meeting on the TBA presentation. (*See* Doc. No. 57 at pp. 13-17). Plaintiff also contends that, even if containing notes from the TBA meeting, the notes would still not be relevant and likely inadmissible.

The Court finds the notebooks likely contained relevant information. Indeed, a party may seek discovery of relevant documents and information regardless of its admissibility. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff does not refute Defendant's proffer that the notebooks might have contained information relevant to the issue of whether Defendant terminated for cause. Plaintiff testified that he kept contemporaneous notes in the destroyed notebooks of his daily meetings with his supervisor. According to his supervisor, he informed Plaintiff of his poor performance and misrepresentations regarding other employees during these meetings. (*See* Doc. No. 52-2, Ex. B at 74:4, 183:6-186:25; Doc. No. 52-7, Ex. G at 67:10-68:21; 91:13-93:18).

The notes, therefore, could have corroborated or discredited Defendant's assertion as to the bases for Plaintiff's termination and would have borne on the issue of whether Plaintiff was terminated for "cause" as defined in the TBA.

Furthermore, whether Plaintiff took notes or not during the TBA presentation does not necessarily mean that he took no notes whatsoever regarding the TBA in the destroyed notebooks. Defendants contend that the TBA was the subject of several meetings, both when it was introduced and during Plaintiff's termination when his separation package was discussed. Based on Plaintiff's testimony as to what the notebooks contained and his practice of taking notes during important meetings, it is likely that there were notes in the destroyed notebooks regarding the TBA and its import and/or impact. (*See* Doc. No. 52-2, Ex. B at 137-138, 205-206).

Because the destroyed notebooks in Plaintiff's possession likely contained information relevant to the claims and defenses in this action, the Court considers whether it was reasonably foreseeable to Plaintiff that he had an obligation to preserve such evidence. Here, Plaintiff was contractually obligated to preserve the notebooks pursuant to his Confidentiality Agreement. (*See* Doc. No. 52-3). Pursuant to the plain language of that Agreement, Plaintiff

> agrees to preserve for the Company's exclusive use and deliver to the Company at the termination of Employee's employment, or at any other time the Company may request, all Company Equipment and property . . . and all memoranda, data, <u>notes</u>, plans, records, reports and other items and documents, whether in electronic, written or other form (and copies thereof), relating to the business of the Company and which Employee may then possess or have under Employee's control.

(Doc. No. 52-3 at pp. 2-3, ¶ 2(a) (emphasis supplied)). In addition, on May 25, 2021, before Plaintiff's effective termination date, Plaintiff received the proposed Separation Agreement, which included a provision that would have required Plaintiff to represent and warrant that he

8

returned all company property, including notes relating to Defendant, and that he did not destroy such property or information. (*See* Doc. No. 52-14 at p. 3; Doc. No. 1-2).

Furthermore, Plaintiff acknowledges that he destroyed the notebooks within weeks of his termination on June 4, 2021 and when "he was contemplating litigation to establish his rights under the TBA[.]" (Doc. No. 57 at p. 21). Plaintiff contends, nevertheless, that, at that time, the "anticipated litigation was narrowly focused" on two specific issues that did not relate to whether Defendant terminated him for cause. (Doc. No. 57 at p. 21). However, Plaintiff appears to have understood that his performance would be at issue in determining his rights to any bonuses under the TBA. In an email dated May 21, 2021, Plaintiff requested "reconsideration of the transaction bonus" based on his contributions to "the success of the company" and, by May 26, 2021, Plaintiff engaged counsel to review the Separation Agreement and TBA. (Doc. No. 57-9 at p. 2; Doc. No. 57-11 at p. 3). At that point in time, even before his official separation from Defendant, Plaintiff appears to have understood that his performance could have an impact on his ability to seek additional compensation under the TBA. In addition, in the draft complaint attached to Plaintiff's counsel's letter dated June 13, 2021, Plaintiff asserts allegations relating to his performance while employed by Defendant. (*See* Doc. No. 52-15 at Ex. S, ¶¶ 36, 38). It, therefore, was reasonably foreseeable to Plaintiff that he had an obligation to preserve all documents, including his personal notebooks, relating to his employment with Defendant. *See Mosaid Techs.*, 348 F. Supp. 2d at 336.

Accordingly, for the reasons stated above, the Court finds that Plaintiff spoliated relevant evidence when he incinerated the notebooks in the fire pit at his home.

**B.   APPROPRIATE REMEDY**

Having found that spoliation has occurred, the Court must now determine the appropriate

sanction, if any. *See Kounelis*, 529 F. Supp. 2d at 519. Sanctions can include dismissal of a claim or defense, suppression of evidence, an adverse inference, fines, and/or an award of attorneys' fees and costs. *See id.* (quoting *Mosaid Tech.*, 348 F. Supp. 2d at 335). In fashioning an appropriate sanction, the Court considers the degree of fault on the party who spoliated, "the degree of prejudice suffered by the opposing party, [and] whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schmid*, 13 F.3d at 79. Dispositive sanctions are appropriate only if the lack of information severely impairs the non-responsible party. *GN Netcom*, 930 F.3d at 82.

First, as to Plaintiff's degree of fault, Plaintiff should have been aware of his obligation to preserve the notebooks at least based on the Confidentiality Agreement and his intent to dispute Defendant's interpretation of the TBA in late May 2021, even before his effective termination date. Yet, Plaintiff chose to destroy his notebooks following his termination notwithstanding having determined that litigation with his former employer would ensue. Plaintiff's intentional destruction thus weighs in favor of an imposition of a sanction.

As to the second factor, Defendant has been unduly prejudiced by the loss of the notebooks. While Defendant and the Court cannot say for certain what Plaintiff kept in those notebooks, Plaintiff testified that the notebooks contained information relevant to his performance at work and may have contained his contemporaneous notes regarding the TBA. Plaintiff's destruction of the notebooks thus deprived Defendant of discovery relevant to the instant dispute. *See Mosaid Techs.*, 348 F. Supp. 2d. at 339 (finding that plaintiff suffered prejudice from the destruction and nonproduction of emails because it hindered their ability to prove infringement and other issues).

The Third Circuit directs courts to consider whether there is a lesser sanction than dismissal that is appropriate to avoid substantial unfairness and deter such conduct in the future. *See* Schmid,

13 F.3d at 79. Accordingly, the Court looks to whether a lesser sanction of an adverse instruction would remedy the undue prejudice to Defendant. For a spoliation inference to attach, Plaintiff must have actually suppressed or withheld relevant evidence. As discussed above, Plaintiff acted with sufficient intentionality and culpability in destroying the notebooks, at a time when Plaintiff knew his employment with Defendant would be litigated in some fashion. By destroying the notebooks, Plaintiff failed to provide Defendant an opportunity to review relevant evidence in this matter.

Accordingly, balancing the need to cure the prejudice to Defendant and to deter future conduct, the Court finds that an adverse inference at trial based on Plaintiff's spoliation of relevant evidence would adequately rectify the circumstances. Upon that inference, the jury may consider the instruction and determine the issues accordingly. Because the Court finds that an adverse inference is the lesser appropriate sanction, the Court declines to further discuss Defendant's requests for other sanctions, including the dismissal of claims or preclusion of evidence on dispositive motion practice.

## IV.     CONCLUSION

For the foregoing reasons, and for other good cause shown, the Court finds that Defendant is entitled to an adverse inference at trial based on Plaintiff's spoliation of relevant evidence. Accordingly, having considered the parties submissions, and for the reasons set forth herein and for other good cause shown,

**IT IS, THEREFORE,** on this **27th** day of **March 2024,**

**ORDERED** that Defendant's Motion for Sanctions for Spoliation of Evidence (Doc. No. 51) is hereby **GRANTED**; and it is further

12

**ORDERED** that the Clerk of the Court is directed to **TERMINATE** the Motion pending at Docket Entry No. 51.

**SO ORDERED.**

/s/ Rukhsanah L. Singh
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**